UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                                          Case No. 05-30321 - WRS
                                                                                               Chapter 7

JOHN M. BONNER, aka Navigator Boats,
LLC., aka Navigator Boats, Inc., aka
Navigator Boats, aka Surfside Houseboats,
aka Marine Fire Systems, aka Jordan
Boats, aka Bonner Boats,

        Debtor.


## MEMORANDUM DECISION

This case came before the Court for hearing on May 24, 2005, on the Motion for Relief from the Automatic Stay filed by Escape Charters, LLC.,[1] Jorge Nagel and Gerald Andrews, Jr., (hereinafter "Movants" or "Escape Charters"), on April 19, 2005. (Doc. 16). At the hearing on this matter, the Trustee for the Bankruptcy Estate, Robert D. Reynolds ("Trustee"), was present and the Movants were present by counsel James R. Turnipseed. The Trustee has objected to the motion and has filed a brief in support of his position. (Doc. 20). For the reasons set forth below, the Motion for Relief from the Automatic Stay is DENIED and the Trustee's objection is SUSTAINED.

---

[1] A Motion for Relief from the Automatic Stay, involving the same parties and issues, was filed in the individual debtor's case (Case No. 05-30321, Docs. 16, 20), and in the corporate debtor's case, (Case No. 05-30322, Docs. 14, 16). The Court will enter an Order consistent with this Memorandum Decision in both cases.

# I. FACTS

In June of 2003, the Movants entered into a contract with the Debtor for the purpose of constructing a specially manufactured fishing vessel.[2] The vessel to be constructed was a 65 foot fiberglass charter boat for a contract price of $230,000.00. The purchase agreement called for the vessel to be built in 6 stages. Escape Charters made installment payments in the amount of $35,000.00. The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on February 7, 2005. It is undisputed that at the point of the filing of the Debtor's bankruptcy petition, the construction of the vessel was at stage 3. There is also no dispute between the parties that to date, the Movants have made payments totaling $138,000.00. (Doc. 16). What is at issue here is a question of title. Escape Charters alleges that the vessel belongs to them because they have acquired a "special property" interest, as a buyer, in the unfinished vessel, pursuant to Alabama's Uniform Commercial Code, ALA. CODE § 7-2-502 (1975).[3] The Trustee asserts that he has title to the uncompleted vessel pursuant to § 7-2-401, the provision designated, "[p]assage of title." The Trustee's intention is to sell the vessel in its unfinished condition and distribute the proceeds of the sale to creditors. See 11 U.S.C. § 363(b)(1).

---

[2] This vessel is identified in the purchase agreement as "hull #NAVHB6504003." (Doc. 16). The Court will refer to this charter boat as "the vessel."

[3] Unless stated otherwise all codes and sections referenced in this Memorandum Decision refer to the Alabama Uniform Commercial Code found in the 1975 Code of Alabama.

## II. CONCLUSIONS OF LAW

The Court finds that the question presented here turns on the issue of title.

Section 7-2-401(1) and (2) provide, in relevant part:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 7-2-501) . . . Subject to these provisions and to the provisions of the article on secured transactions (Article 9) [now 9A], title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time and place, and in particular and despite any reservation of a security interest by the bill of lading . . .

ALA. CODE § 7-2-401(1), (2) (1975). It would appear that, as a matter of Alabama law, title of the incomplete vessel was in the debtor; and by operation of the Bankruptcy Code, in the Trustee. 11 U.S.C. § 541. Escape Charters asserts that the "Debtor has no equity in the boat hull at issue, as *title* rests with the Creditors under state law. . ." (Doc. 16) (emphasis added). They reach this conclusion by arguing that they have a "special property interest" in the unfinished vessel and have obtained the right to recover the goods from the Debtor upon its insolvency. They rely on § 7-2-502(1)(b), which provides in relevant part:

> (1) . . . even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of Section 7-2-501 may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if:
>   (b) in all cases, the seller becomes insolvent within 10 days after receipt of the first installment on their price. . .

ALA. CODE § 7-2-502(1)(b) (1975).

3

In order for a buyer to obtain a "special property" interest, the goods in question must be identified to the contract. Section 7-2-501[4] controls when goods become identified to the contract. By its own terms "[t]he purpose of [§ 7-2-501] is to determine the point in time when the buyer has an insurable interest in the goods or a special property interest." Matter of Darling's Homes, Inc. (General Electric Credit Corporation v. Gayl), 46 B.R. 370, 379 (Bankr. D. Del. 1985). The Court finds that there is no issue as to identification in this case. As the unfinished vessel presently at issue did not exist at the time the contract was made, it constitutes a future good pursuant to § 7-2-501(b). According to the contract, the majority of the parts used to construct the vessel would be provided by the Debtor, including underwater gear, steering gear, mechanical controls, air conditioners, a 12-volt electrical system, the plumbing system, and vessel finishes such as handrails, cabin windows, and exterior doors. The purchaser was to furnish all electronics such as the engines, generator and life-saving equipment. All of the aforementioned parts and equipment were designated for the particular vessel to be built, hull #NAVHB6504003, as specified in the contract. As there is no dispute that the Movants have made installment payments up to stage 3 of construction, the unfinished vessel has been identified and Escape Charters has a "special property" interest in the unfinished vessel. See Matter of Darling's Homes, Inc., 46 B.R. 370, 379 (in rejecting a

---

[4] Section 7-2-501(1) provides in part that a "buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement "identification" occurs:
    (a) When the contract is made if it is for the sale of goods already existing and identified;
    (b) If the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers…
ALA. CODE § 7-2-501(1) (1975).

requirement of positive physical action by the seller before designation, the court noted that "[t]he general policy is to resolve all doubts in favor of identification) (citation omitted); cf. See In re Tacoma Boatbuilding Co. (Continental Illinois National Bank and Trust Co. of Chicago v. Tacoma Boatbuilding Co.), 158 B.R. 19, 23 (S.D. N.Y. 1993) (holding that uncompleted goods were not meant to be included within the term "future goods," rather shipping, or marking or designating for purposes of identification is to occur on future goods once they are completed).

Finding that Escape Charters has a special property interest, does not entitle them to possession of the unfinished vessel. See In re Paoletti, Inc. (Diesel Performance, Inc. v. G. Paoletti Co., Inc.), 205 B.R. 251, 260 (Bankr. N.D. Cal. 1997) (holding that in order to obtain the right to possession of goods, section 2-502$^5$ requires the buyer to have: 1) made a partial payment for the goods; 2) the seller must have become insolvent within ten days after receiving the first installment of the purchase price; and 3) the buyer must tender any unpaid balance of the purchase price). In this case, there is a complete failure of evidence as to a showing of the Debtor's insolvency$^6$ within 10 days after receipt of the first installment payment, as required by § 7-2-502(b). Without question, requiring the Movants to prove the Debtor's insolvency within a narrow 10-day window is a difficult task. However, in this case, there was not even an attempt by the Movants to meet this requirement. The Court simply has no evidence before it regarding the debtor's

---

$^5$ California Uniform Commercial Code, CAL. COM. CODE § 2502 (2002), is nearly identical to Alabama's Uniform Commercial Code, ALA. CODE § 7-2-502 (1975).

$^6$ Section 7-2-201(23) states that "[a] person is 'insolvent' [if they have] ceased to pay his or her debts in the ordinary course of business or cannot pay his or her debts as they become due or is insolvent within the meaning of the federal bankruptcy law." Bankruptcy Code § 101(32) defines the term "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property. . ."

insolvency within 10 days of receipt of the first installment payment and accordingly the Movants are not entitled to the right of possession of the unfinished vessel pursuant to § 7-2-502(b).[7] On this point, the Court further notes that the contract in question was made in June of 2003 and the Debtor did not file a bankruptcy petition until February 7, 2005. Assuming that the first installment payment was made close in time to the creation of the contract, the Movants would have had to prove that the Debtor was insolvent, during a very narrow window, nearly two years prior to the filing bankruptcy. See In re Surplus Furniture Liquidators, 199 B.R. 136, 141 (Bankr. M.D. N.C. 1995) (holding that the buyer failed to prove the debtor's insolvency within 10-day time period, as the evidence suggested that the debtor encountered serious cash flow problems months before the Debtor was forced to liquate its furniture inventory).

In support of their position that they have the right to possession of the vessel, the Movants cite to the case of Matter of CSY Yacht Corp., 42 B.R. 619 (Bankr. M.D. Fla. 1984). In CSY Yacht Corp., the buyer contracted with the Debtor to build a 44 foot cutter. The buyer made installment payments of approximately $35,000.00 before the Debtor filed its bankruptcy petition. The buyers argued that they had a "special property interest," entitling their claim for a refund of the installments to be treated as secured. The Court held that because the construction of the yacht was never commenced, the materials to be used in the construction of the boat were never identified; hence no "special property interest" was ever created. This case does not assist the Movants in their efforts to assert possession over the vessel, mainly because the Court there never

---

[7] In support of their claim to the right to recover the vessel, the Movants cite to § 7-2-502(2), which states that "[t]he buyer's right to recover the goods under subsection (1)(a) vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver." The Court notes that subsection (1)(a) is not applicable in this case as that section specifically applies to "goods bought for *personal, family, or household purposes*." § 7-2-502(1)(a) (emphasis added).

reached the issue of the seller's insolvency, as it found that the materials to build the boat were never identified to the contract.

The Movants here are not entitled to possession of the vessel pursuant to § 7-2-502(b). There is no showing of insolvency. See In re G. Paoletti, Inc., 205 B.R. 251, 263 (noting that despite obtaining a special property interest, "[t]he buyer's right to possession only arises under certain conditions, among them, the seller's becoming insolvent within ten days after receiving the first installment on the purchase price"). However, the nature of exactly what the Movants are entitled to in light of their "special property interest," in the context of a bankruptcy case, is a question that must now be addressed. The Court finds the case of In re G. Paoletti, Inc., 205 B.R. 251, 262, to be persuasive on this point. In Paoletti, the City of Oakland (the "buyer") contracted with the Debtor to purchase two fire trucks for a total price of $359,706.09. Before the Debtor's bankruptcy case was commenced and prior to the completion of the retrofit work on the fire trucks, the buyer made a partial payment in the amount of $167,661.38. The buyer asserted that title to the trucks passed to it when it made this partial payment. Conversely, the Trustee argued that, at best, the buyer had a "special property interest." Along with finding that the buyer failed to tender the balance of the purchase price, the Court held that § 2-502[8] gives the buyer nothing more than a claim against the bankruptcy estate. The Court stated:

> [t]he Court concludes that section 2502 gives a buyer nothing more than an unsecured claim in a bankruptcy case. Generally, federal bankruptcy law looks to state law to determine a party's property rights. However, a buyer's "special property interest" in goods identified to the contract is a property interest in name only. The only right this "property interest" gives a buyer is the right to possession of the goods under certain circumstances…Thus, a buyer's special

7

property interest is more accurately described as an equitable remedy than a property interest.

In re Paoletti, Inc. (Diesel Performance, Inc. v. G. Paoletti Co., Inc.), 205 B.R. 251, 260 (Bankr. N.D. Cal. 1997).

In addition to holding that § 2-502 is inconsistent with § 365 of the Bankruptcy Code, the Court reasoned that had the drafters of the Bankruptcy Code wanted to preserve a buyer's rights under § 2-502, they would have enacted, specifically for buyers, a provision comparable to 11 U.S.C. § 546(c), which preserves the state law rights of a seller of goods in the case of an insolvent debtor.

In summary the Court finds that title to the vessel presently remains with the Trustee and did not pass to the Movants, as there is no dispute that the completion of the Debtor's performance and the physical delivery of the vessel did not occur, nor is there any evidence of an explicit agreement[9] between the Movants and the Debtor that title would pass prior to delivery. See § 7-2-401. The Court further finds that the Movants are not entitled to possession of the vessel, as the insolvency requirement of § 7-2-502(b) has not been met. The Movants are entitled to file a claim in the Debtor's bankruptcy case in an amount they deem appropriate. This claim is unsecured because it is undisputed that the buyer does not have a perfected security in the unfinished vessel. For the reasons stated above, the Movants' Motion for Relief from the Automatic Stay is DENIED and the Trustee's objection is SUSTAINED.

---

[9] The Court in In re G. Paoletti, Inc., 205 B.R. 251, 259, citing California Commercial Code § 2201(1), held that any explicit agreement between the buyer and the seller that title would pass prior to physical delivery, must be in writing and signed by the party against whom enforcement is sought, as that case, like the present one, dealt with the sale of goods for a price of $500 or more.

Done this 16th day of June.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Lewis B. Hickman, Jr., Attorney for Debtor
James R. Turnipseed, Attorney for Escape Charters, LLC., Jorge Nagel and Gerald Andrews, Jr.,
Robert DeLoach Reynolds, Trustee